UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LILLIAN COHAN,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | 14-CV-3173-FVS<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |

**THIS MATTER** comes before the Court without oral argument based upon the parties' cross motions for summary judgment.  Plaintiff Lillian Cohan is represented by Maury A. Kroontje.  The Acting Commissioner is represented by Catherine Escobar.

**BACKGROUND**

Lillian Cohan was born on May 18, 1957.  (TR 586.)  Over the years, she has worked as a teacher's aide (TR 49-50), a barista (TR 51), a receptionist (TR 52-53), and an administrative assistant (TR 53).  As explained in more detail

Order ~ 1

below, Mrs. Cohan suffers from chronic pain in her back, hips, and feet. (TR 57-59.) She says she is no longer able to work because of the pain. Accordingly, she has applied for Title II disability insurance benefits ("DIB"), alleging her disability began on May 10, 2011. (TR 10.)

The Social Security Administration ("SSA") evaluated Mrs. Cohan's application for Title II benefits. As part of the process, the SSA formulated her Residual Functional Capacity. A claimant's RFC is the SSA's assessment of the most she can do in a work setting despite her physical limitations. 20 C.F.R. § 404.1545(a)(1). Given Mrs. Cohan's RFC, the SSA denied her initial application for disability. (TR 93.) She asked the SSA to reconsider. During this phase of the proceedings, two physicians -- Norman Staley, M.D., and Marie Turner, M.D., -- reviewed Mrs. Cohan's medical records. (TR 100-103, 388-89.) Neither physician disagreed with the SSA's formulation of Mrs. Cohan's RFC. Due, at least in part, to the opinions of Drs. Staley and Turner, the SSA declined to reconsider. The SSA informed Mrs. Cohan of its decision during March of 2012. She requested review by an Administrative Law Judge ("ALJ"). Prior to the

Order ~ 2

hearing, Mrs. Cohan asked one of her treating physicians, David Lindgren, M.D., to complete a "Lumbar Spine Impairment Questionnaire." (TR 586-592.) His answers indicate it would be very difficult for Mrs. Cohan to return to work given her physical impairments.

The administrative hearing proceeded as scheduled on April 24, 2013. Mrs. Cohan was present, together with her non-attorney representative. Both Mrs. Cohan and a vocational expert testified. Once all of the evidence had been presented, the ALJ took the case under advisement. He issued a written decision on July 10, 2013. The ALJ was not unsympathetic. He agreed Mrs. Cohan suffers from severe physical impairments. (TR 22.) He further agreed her impairments are the type of impairments that could cause at least some of the symptoms she described. (TR 26.) However, he discounted both her testimony and Dr. Lindgren's written assessment. (TR 26-28, 29.) In contrast, the ALJ placed "significant weight" upon the assessments of Drs. Turner and Staley, the non-examining physicians. (TR 28.) After evaluating all of the evidence, the ALJ determined Mrs. Cohan is capable of performing past relevant work as either a

Order ~ 3

secretary or an administrative clerk. (TR 29.) The ALJ's determination regarding past relevant work was fatal to her disability claim. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you can still do your past relevant work, [the SSA] will find that you are not disabled.")   Mrs. Cohan asked the Appeals Council to review the ALJ's decision, but, on September 22, 2014, the Appeals Council decided not to do so. At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.900(a)(5). Mrs. Cohan commenced this action on November 21, 2014. 42 U.S.C. § 405(g). Both she and the Acting Commissioner move for summary judgment.

**STANDARD OF REVIEW**

A district court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.* As a result, the Commissioner's decision

Order ~ 4

"will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986). "Substantial evidence" means more than a mere scintilla, . . . but less than a preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.1988) (internal punctuation and citations omitted).

**MRS. COHAN**

Mrs. Cohan testified she suffers from severe pain in her back and hips. The ALJ analyzed her testimony in light of the record as a whole, concluding she had overstated the severity of her pain. Broadly speaking, his conclusion was a function of two determinations. To begin with, he decided the medical evidence concerning the severity of her pain was equivocal. Next, he decided the activities she performed are inconsistent with the degree of pain she reported. Mrs. Cohan takes exception to the ALJ's decision to discount her testimony.

The ALJ acknowledged Mrs. Cohan produced medical evidence she suffers from a combination of physical impairments. The ALJ further acknowledged the impairments reasonably could be expected to produce some degree of pain. (TR

Order ~ 5

26.)  Once a claimant makes such a showing, she need not offer further medical evidence to substantiate the alleged severity of her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  Furthermore, if there is no evidence of malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir.1996).  The ALJ's written decision in this case contains a thoughtful analysis of Mrs. Cohan's credibility.

   The ALJ began with imaging studies (principally x-rays).  Given the source of Mrs. Cohan's pain (*i.e.*, lower back and hips), there are a number of such studies in the record.  After examining the studies, the ALJ concluded, "Providers were equivocal regarding their interpretation of the findings."  (TR 26.)  For example, Dave S. Atteberry, M.D., a neurosurgeon, took x-rays of Mrs. Cohan's back on October 11, 2011.  He diagnosed "spondylolisthesis at L4-L5 and stenosis from L4 to S1."  (TR. 287.)  Based on this diagnosis, he recommended surgery.  *Id.*  By contrast, Pamela B. Sheets, M.D., a rheumatologist, took x-rays on

Order ~ 6

January 10, 2012.  Dr. Sheets observed, "The x-rays show age-related degenerative discs and joints, but nothing out of the ordinary."  (TR. 391.)  This statement appears to contradict Dr. Atteberry's diagnosis.  However, the above-quoted statement was not Dr. Sheets' last word on the subject.  She went on to say, "I think more of the problem is in the muscles and other soft tissues . . . ."  *Id.*  In other words, Dr. Sheets does not appear to have discounted the existence of pain.  Rather, she appears to have concluded the source of the pain was "in the muscles and other soft tissues," not in the discs and joints.

      The ALJ also contrasted Dr. Atteberry's diagnosis of October 11, 2011, with a recommendation he made on December 14, 2012.  On the latter date, Dr. Atteberry recognized Mrs. Cohan was reluctant to undergo back surgery.  The ALJ interpreted this comment as an indication Dr. Atteberry thought she could get by without surgery.  While the ALJ's interpretation is correct as far as it goes, the record reflects Dr. Atteberry continued to believe Mrs. Cohan "might do best with a lumbar depression as an operative intervention."  The fact Dr. Atteberry

Order ~ 7

continued to recommend surgery on December 12, 2012, tends to support Mrs. Cohan's testimony she was experiencing chronic pain.

Next, the ALJ turned to clinical examinations of Mrs. Cohan. She repeatedly told health care providers she was experiencing severe pain in her back and hips. The ALJ reviewed the results of their examinations of Mrs. Cohan. He noted that, in a number of instances, the examination revealed either that her gate was normal, or she possessed normal range of motion in her lower spine, or she possessed normal strength and sensation in her lower extremities. Given such findings, the ALJ decided the results of the clinical examinations were equivocal.

While the medical records contain the findings that are cited by the ALJ, those findings must be viewed in context. For example, on July 21, 2011, Mrs. Cohan was examined by Robert N. Greene, M.D. (TR 316.) As the ALJ noted, Dr. Greene reported a normal gait. Nevertheless, he determined it was appropriate to inject cortisone into her hips in order to alleviate the pain she was experiencing. (TR 318.) Or take Mrs. Cohan's visit to Brett Quave, M.D., on April

Order ~ 8

16, 2012.  It is true, as the ALJ noted, that Dr. Quave reported "relatively full

forward flexion and extension of the lumbar spine." (TR 485.)  However, Dr.

Quave also reviewed an MRI of the lumbar spine that had been performed on

March 20, 2012.  *Id.*  In Dr. Quave's opinion, the MRI showed "multilevel chronic

degenerative disk disease." *Id.*

Besides reviewing the medical evidence, the ALJ also examined the

activities Mrs. Cohan was able to perform despite chronic, severe pain.  As he

noted, she reported to one of her representatives that she has experienced

"acute chronic debilitating back pain for about 7 years," *i.e.*, since 2005. (TR.

264.)  Given this allegation, the ALJ considered the activities she has engaged in

since 2005.  He pointed out she was able to maintain a fairly active life, and he

cited a number of examples in support of this observation. (TR 28.)  Among

other things, she reported working as a teacher's aide as late as 2011. (TR 264.)

In addition, she testified she was able to fly from the State of Washington to the

State of Pennsylvania during 2012 in order to visit a daughter. (TR 56.)  The trip

required her to sit for extended periods of time; something she was able to do.

Order ~ 9

Besides traveling, she continued her hobby of photography.  Indeed, on May 29, 2012, she carried heavy photography bags and equipment to an appointment with a physical therapist.  (TR 455.)

Mrs. Cohan does not dispute she engaged in the activities cited by the ALJ.  However, she does dispute the inferences he drew from them.  For one thing, she says the ALJ failed to consider that her pain worsened over time.  For another thing, she insists the activities she engaged in do not demonstrate she could perform a fulltime job.  Consequently, she argues the ALJ erred by discounting her credibility on the basis of the activities she engaged in after 2005.

The first of Mrs. Cohan's two criticisms is the ALJ failed to appreciate the progressive nature of her impairments.  She alleges her physical impairments were exacerbated by "an extremely hard fall" that occurred on May 10, 2011.  (TR 67.)  She was working as a teacher's aide that day.  She says she severely twisted her right ankle, which caused her to fall.  As she fell, her left knee smashed into a concrete floor.  After that, all of her symptoms grew worse.  She says her disability began on that day.  *Id.*

Order ~ 10

The ALJ did not dispute Mrs. Cohan fell on May 10, 2011.  Nor did he dispute the injury aggravated her physical impairments.  However, he quite properly noted she engaged in activities thereafter that appear to be inconsistent with the physical limitations she described during her testimony.  To cite but two examples, she remained able to carry heavy photography equipment and she was able to sit in an airplane seat for hours at a time.  Were Mrs. Cohan's pain as severe as she testified, one would not expect her to be able to engage in either activity.  The fact she did so tends to undermine her credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.2012) ("the ALJ may consider inconsistencies . . . between the [claimant's] testimony and the claimant's conduct").

The second of Mrs. Cohan's two criticisms of this part of the ALJ's decision is that he overstated the significance the activities she is capable of performing.  She argues the fact she remained able to engage in a number of activities does not demonstrate she could work.  Mrs. Cohan has a point.  "ALJs must be especially cautious in concluding that daily activities are inconsistent with

Order ~ 11

testimony about pain," the Ninth Circuit has observed, "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir.2014). Here, the ALJ exercised appropriate caution when evaluating Mrs. Cohan's activities. He did not err in observing that a person who can carry heavy photography equipment to an appointment with a physical therapist does not appear to be experiencing disabling pain.

This part of the ALJ's explanation is convincing. *See Smolen*, 80 F.3d at 1283 (ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of her symptoms). By contrast, that part of his explanation involving the medical evidence is vulnerable to criticism. While, as the ALJ observed, there is some disagreement among Mrs. Cohan's health care providers with respect to the source of her pain, they appear to agree she is in pain. They also agree she needs substantial treatment, perhaps even

Order ~ 12

surgery. Consequently, characterizing the medical evidence as "equivocal" does not do justice to the record as a whole.

**DR. LINDGREN**

Dr. David Lindgren treated Mrs. Cohan on multiple occasions between September of 2011 and March of 2013. On March 6, 2013, he completed a "Lumbar Spine Impairment Questionnaire" at Mrs. Cohan's request. (The Questionnaire appears to have been drafted by a company that assists persons apply for Social Security disability benefits.) Dr. Lindgren offered a bleak assessment of Mrs. Cohan's ability to work. (TR 588-591). Dr. Lindgren's assessment contradicted the opinions of Drs. Turner and Staley, the two non-examining physicians who had reviewed Mrs. Cohan's medical records during 2012. The ALJ assigned "significant weight" to their opinions, but he discounted Dr. Lindgren's. Mrs. Cohan challenges the ALJ's decision to discount Dr. Lindgren's opinion.

Dr. Lindgren was a treating physician. The Court may uphold the ALJ's decision to discount his assessment of Mrs. Cohan's limitations only if the ALJ

Order ~ 13

provided "specific and legitimate reasons" that are "supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998). The ALJ's rationale for discounting Dr. Lindgren's opinion is set forth on page ten of his written decision. According to the ALJ, Dr. Lindgren's statements in the Questionnaire must be discounted for at least four reasons: (1) the Questionnaire does not include objective findings; (2) his treatment notes do not support his written assessment; (3) he relied largely upon Mrs. Cohan's description of her symptoms; and (4) his written assessment is inconsistent with the various activities Mrs. Cohan is capable of performing (*e.g.*, sitting in an airplane seat for an extended period of time). (TR 29.)

In order to evaluate the ALJ's rationale, it is necessary to review Dr. Lindgren's treatment notes. Mrs. Cohan saw him twice during the first three months of 2013. The first of the appointments occurred on January 9, 2013. Mrs. Cohan went to Dr. Lindgren on that date for a routine annual physical examination. (TR 636.) Dr. Lindgren observed that her "main complaints are ongoing issues with back pain." (TR 638.) He does not appear to have treated

Order ~ 14

the pain of which she complained.  Instead, he noted Mrs. Cohan was to "follow up with neurosurgery, pain specialist and orthopedics as scheduled." (TR 638.)

The second of the two appointments occurred on March 1, 2013.  Mrs. Cohan returned to Dr. Lindgren complaining of shoulder pain. (TR 625.)  He injected a steroid into her left shoulder.  During the visit, they discussed the pain she was experiencing in her lower back and hips.  Dr. Lindgren noted:

> According to [Mrs. Cohan's] neurosurgeon, she does have significant instability in her lower back L1-L2 and L2-L3.  She also has sacroiliac instability which causes [a] significant amount of pain with virtually any movement.  She did have bilateral fluoroscopic guided steroid injections and bilateral greater trochanteric bursas yesterday.  She has not had much in the way of pain relief yet.

(TR 626.)

The statement quoted above indicates Dr. Lindgren was familiar with the diagnosis of Mrs. Cohan's neurosurgeon and the treatment he provided. (Although Dr. Lindgren does not mention Dr. Atteberry by name, it seems reasonable to infer that it was Dr. Atteberry to whom Dr. Lindgren was referring.)  In essence, Dr. Lindgren incorporated Dr. Atteberry's diagnosis into

Order ~ 15

his treatment notes of March 1, 2013.  Five days later, Dr. Lindgren completed the Questionnaire.  The opinions he expressed therein appear to be consistent with the information that is recorded in his treatment notes (including, but not limited to, Dr. Atteberry's diagnosis).  Thus, contrary to the ALJ, Dr. Lindgren's treatment notes support the opinions he expressed in the Questionnaire.

Nor does the record support the ALJ's assertion that the Questionnaire lacks objective findings.  In Paragraph 5, Dr. Lindgren wrote that his assessment of Mrs. Cohan was supported by "lumbar x ray -- multi-level degenerative changes and anterolisthesis L4 on L5 and facet arthrosis."  (TR 587.)  The x-rays of Mrs. Cohan's back constitute objective evidence.  Admittedly, there is some disagreement among Mrs. Cohan's treating physicians with respect to the severity of the problems revealed in the x-rays.  However, for his part, Dr. Lindgren thinks the x-rays reveal problems that are capable of producing the pain Mrs. Cohan described.

Another of the ALJ's criticisms is that Dr. Lindgren relied largely upon Mrs. Cohan's description of her symptoms, *e.g.*, tenderness and reduced range of

Order ~ 16

motion. (TR 29.) Undoubtedly, Dr. Lindgren relied upon information that was supplied by Mrs. Cohan; and as the ALJ observed, such information is subjective. However, the record does not support the ALJ's assertion that Dr. Lindgren relied largely upon subjective information. To the contrary, a fair reading of his treatment notes concerning the March 1st appointment indicates Dr. Lindgren was aware of, and relied heavily upon, Dr. Atteberry's diagnosis and treatment.

The ALJ's final criticism of the opinions Dr. Lindgren expressed in the Questionnaire is that they are inconsistent with the activities Mrs. Cohan engaged in despite the pain she was experiencing. As explained above, this is a valid observation. While Mrs. Cohan undoubtedly experiences significant pain in her back and hips, she is able to sit for extended periods of time when she wants to. Not only that, but also she is able to carry fairly heavy objects when she wants to. It was reasonable for the ALJ to place significant weight upon such circumstances when formulating Mrs. Cohan's RFC.

To summarize, the ALJ provided four reasons for discounting Dr. Lindgren's testimony. One them is supported by substantial evidence, the others

Order ~ 17

are not.  Contrary to the ALJ, Dr. Lindgren did not rely principally upon Mrs. Cohan's subjective description of her symptoms.  His treatment notes concerning the March 1, 2013, appointment indicate he was aware of, and relied upon, Dr. Atteberry's diagnosis and treatment.  Presumably, the diagnostic information Dr. Atteberry provided to Dr. Lindgren is the type of information a family physician uses to treat patients.  The information provided by Dr. Atteberry gave Dr. Lindgren an objective basis for the opinions he expressed in the Questionnaire.

**CONCLUSION**

Although the ALJ conscientiously reviewed the record, and although a number of his findings are supported by substantial evidence, the Court is constrained to conclude he failed to provide an adequate explanation of his decision to discount Dr. Lindgren's assessment.  What is more, the error is not harmless.  Dr. Lindgren's opinion provided powerful support for Mrs. Cohan's disability claim.  Thus, the ALJ's decision to discount Dr. Lindgren's opinion cannot be characterized as "inconsequential."  *Treichler v. Comm'r of Soc. Sec.*

Order ~ 18

*Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  Where, as here, a prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation[.]" *Id.*, (internal punctuation and citation omitted).  Whether this is one of those rare circumstances requires further analysis.  The Court must conduct a three-step inquiry.  *Id.* at 1100.  The first step is to determine "whether the 'ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* at 1100-1101 (quoting *Garrison*, 759 F.3d at 1020).  As explained above, that type of error occurred in this case.  Consequently, the Court must press on to the second step in the inquiry, *viz*, whether "'the record has been fully developed'."  *Id.* at 1101 (quoting *Garrison*, 759 F.3d at 1020).  Here, it is difficult to discern any additional evidence that would be admitted at a second administrative hearing that would have a bearing on Dr. Lindgren's credibility.  Were the Court to remand for further administrative proceedings, it is likely the ALJ would end up examining the same evidence he considered after the first hearing.  That being so, the Court advances

Order ~ 19

to the third step in the inquiry, *viz.*, whether, given the record as a whole, there is any uncertainty as to the outcome of the proceedings. *Id.* at 1101. If a second administrative hearing is held, and if the ALJ credits the testimony of Dr. Lindgren, then the ALJ will almost certainly rule Mrs. Cohan is disabled. It follows, therefore, this is one of those rare cases in which it is appropriate to reverse and remand with instructions to award benefits to the claimant.

**IT IS HEREBY ORDERED**:

1. The defendant's motion for summary judgment (**ECF No. 15**) is **denied** and the plaintiff's (**ECF No. 14**) is **granted**.

2. The ALJ's decision of July 10, 2013 (TR 30) is reversed.

3. The case is remanded with instructions to award disability benefits.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order and furnish copies to counsel.

**DATED** this 26th day of April, 2016.

s/Fred Van Sickle
FRED VAN SICKLE
Senior United States District Judge

Order ~ 20